IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THLOPTHLOCCO TRIBAL TOWN, )<br>a federally-recognized Indian Tribe, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>GREGORY R. STIDHAM, Judge of the )<br>District Court of the Muscogee (Creek) )<br>Nation; and )<br>)<br>KATHLEEN SUPERNAW, )<br>Chief Justice of the Muscogee (Creek) )<br>Nation Supreme Court; and )<br>)<br>MONTE DEER, Justice of the Muscogee )<br>(Creek) Nation Supreme Court, and )<br>)<br>GREGORY BIGLER, Judge of the District )<br>Court of the Muscogee (Creek) Nation, )<br>)<br>)<br>)<br>**Defendants.** ) | Case No. 09-CV-527-JHP-FHM |

## ORDER

Now before the Court is Defendants' Motion to Dismiss (Dkt.# 54), Plaintiff's Response to said motion, and Defendants' Reply. Defendants move to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1).

**I. Findings of Fact**

1. Thlopthlocco is the plaintiff in the two lawsuits referenced in the Second Amended Complaint, which are pending before the Muscogee (Creek) Nation ("MCN") tribal courts. In the first lawsuit ("Anderson I"), Thlopthlocco seeks a declaratory judgment finding the members of the Thlopthlocco Business Committee ("the Business Committee"), which is Thlopthlocco's governing body, are the "lawful leaders of Thlopthlocco," and attempts to void certain actions by the individual defendants.

2. The Business Committee's purported authority to file Anderson I on behalf of Thlopthlocco emanates from Resolution No. 2007-21, passed on June 7, 2007.  Thlopthlocco argues the Resolution only provides a "limited waiver of Thlopthlocco's sovereign immunity.  Thlopthlocco does not address, however, the following relevant language contained in the Resolution:

> WHEREAS, although Thloptholocco Tribal Town is a separate federally recognized Indian tribe, it is also a traditional Muscogee (Creek) Nation [town] and subject to that nation's courts and jurisdiction; and
> ...
> WHEREAS, the Muscogee (Creek) Nation pursuant to a self-governance compact with the United States of America, received federal monies for judicial services based upon Thlopthlocco's population numbers for the benefit of Thlopthlocco people; ...

Thus, even before filing Anderson I, the Business Committee recognized the MCN courts (including the judicial officers in the instant case) had jurisdiction to hear Anderson I and, in fact, the United States Government, pursuant to its Indian "self-governance" policies, pays federal money to the MCN courts to hear cases such as Anderson I.

3. While Thlopthlocco is a separate federally recognized Indian tribe, many of its members are also enrolled members of the MCN.  Further, all but one of the sitting members of the Business Committee are members of the MCN.  Additionally, as admitted by Plaintiff, Thlopthlocco is organized as a "tribal town" of the MCN.

4. In the Anderson I Complaint, Thlopthlocco repeatedly asserted the MCN courts retained jurisdiction to adjudicate that litigation, a fact which Thlopthlocco now contests in the instant case. Specifically, the Anderson I Complaint stated the MCN District Court had jurisdiction over "the parties" because:

> (a) The MCN District Court "has authority to hear civil actions arising under the laws of the Muscogee (Creek) Nation" ;
>
> (b) "Jurisdiction and venue lie in this [MCN District Court] under the Muscogee (Creek) Nation Title 27, §1-102(B) and Thlopthlocco Tribal Town v. Martha "Tilly" Tomah, [et al.]" ;
>
> © The Anderson defendants are all MCN citizens; and

> (d) Thlopthlocco has "not established a tribal court, is located within the historical boundaries of the Muscogee (Creek) Nation, is one of the original confederated tribal towns of the Muscogee (Creek) Nation, and receives federal funding for judicial services allocated for Thlopthlocco's behalf."

5. Thlopthlocco initially requested, and obtained, a temporary restraining order from the MCN District Court on June 11, 2007, that gave Thlopthlocco the relief it sought – an order preventing the Anderson I defendants from further interference in the operations of the Business Committee.

6. The MCN District Court later dismissed Anderson I based on a Motion to Dismiss filed by the Anderson I defendants, which also effectively dissolved the temporary restraining order. Thlopthlocco immediately appealed to the MCN Supreme Court through an Application for Writ of Mandamus which again requested a ruling that the MCN tribal courts had jurisdiction to hear Thlopthlocco's case. Specifically, the Application for Writ of Mandamus stated to the MCN Supreme Court:

> This Court has jurisdiction pursuant to (1) a special grant of limited jurisdiction to decide from Thlopthlocco Tribal Town v. Tomah, 8 Okla. Trib. 451 (musc. (Cr.) D. Ct. 2004); (ii) pursuant to the Muscogee (Creek) Nation Constitution, Art. VII, § 1; and (iii) pursuant to law, Muscogee (Creek) Nation Code Ann. ("Mvskoke Code") Title 27, §1-101 © and 1-1-2. Writs are authorized pursuant to Mvskoke Code, Title 27, App. 2, ("MCN RAP") Rule 2 and pursuant to the inherent powers of this Supreme Court.
>
> The Thlopthlocco is also a traditional Creek Tribal Town and enjoys special rights and privileges pursuant to the Muscogee (Creek) Nation Constitution and Art. II, § 5. **The District Court has a duty to exercise jurisdiction** pursuant to Mvkoke Code, Title 27, §1-101 (D)(2) and (3); 1992 NCA 92-205, §2. Jurisdiction and venue was, and is appropriate in both the District and Supreme Court pursuant to Title 27, §1-102(B). Upon the Thlopthlocco conferring appropriate jurisdiction by resolution to the Muscogee (Creek) Nation Court, jurisdiction properly lies. (emphasis added).

7. The MCN Supreme Court granted the requested writ of mandamus on June 26, 2007, holding in a minute order that " the Muscogee (Creek) Nation Courts do have jurisdiction over this matter." The MCN Supreme Court reiterated this position in a formal, written opinion issued on October 26, 2007. In this opinion, which again accepted Thlopthlocco's position that the MCN courts had jurisdiction to hear Anderson I, the Court articulated:

> The relationship between Thlopthlocco and the federal government is different from the relationship between Thlopthlocco and the Mucogee (Creek) Nation. Under federal law, Thlopthlocco is a Muscogee (Creek) Nation tribal town ... The Tribal Town Constitution

3

> affects neither the status of tribal town members as citizens of the Muscogee (Creek) Nation nor the relationship of the Tribal Town to the Muscogee Nation which remains analogous to a city/state government or state/federal government relationship.
>
> The members of Thlopthlocco Tribal Town, as citizens of the Muscogee Nation, have requested relief in the courts of the Muscogee (Creek) Nation. Neither the Town nor its members will be abandoned by the Nation's Courts.

Even though Thlopthlocco requested this ruling, and the ruling served Thlopthlocco's purposes in obtaining an injunction against the Anderson I defendants, Thlopthlocco now asks this Court to overturn this ruling through injunctive relief, including, ultimately, a permanent injunction to cease all efforts by the MCN to exercise jurisdiction over the Creek citizens who are parties in the underlying lawsuits.

8. Shortly before the MCN Supreme Court's above-quoted final decision issuing the writ, the Anderson I defendants filed "cross-claims" on October 11, 2007, that sought related injunctive and declaratory relief. The pleading alleged that most members of the Business Committee had committed various violations of the Thlopthlocco Constitution. As such, the Anderson I defendants' pleading demanded equitable relief, under tribal law, (1) voiding the adoption of certain individuals as members of Thlopthlocco, (2) declaring the Business Committee's alleged refusal to allow certain individuals to run for office and vote in a Thlopthlocco election as a violation of their rights and (3) enjoining the "cross-defendants" from interfering with their own attempts to lead Thlopthlocco.

9. Thlopthlocco admitted to this Court in the original Complaint that these "cross-claims" were brought individually against nine members of the Business Committee, who are jointly enrolled members of Thlopthlocco and the MCN. Accordingly, regardless of Thlopthlocco's immunity status as the plaintiff in Anderson I, it is for the MCN courts to determine, under tribal law, whether they have jurisdiction as to the issues in these cross-claims, which involve the political affairs of fellow Creek Indians.

10. Thlopthlocco filed a "conditional" motion to dismiss in Anderson I on June 12, 2009, which asked the MCN District Court to dismiss Anderson I in its entirety. Thlopthlocco asserted that the individual third-party defendants in Anderson I enjoyed sovereign immunity and could not be sued under Ex parte

Young because the underlying issues in Anderson I did not involve federal law. The conditional motion concluded this argument by noting:

> Tribal officials are immunized from suits brought against them in their individual capacities when suit is brought against them because of their official capacities. This would be in circumstances where the suit is brought because of the powers the individual possesses in his or her official capacity enables that person to grant the relief requested on behalf of the tribe.

11. The defendant, Judge Stidham, denied the conditional motion from the bench during a July 16, 2009 hearing. Judge Stidham noted Thlopthlocco did not attempt to withdraw its immunity waiver until after it received unfavorable rulings in the case, disagreed Thlopthlocco could withdraw that immunity waiver at will. In advance of this ruling, Thlopthlocco had already stated that "if this motion is denied in whole, or in part, Thlopthlocco respectfully reserves the right to continue to assert the primary and defensive claims it asserted so as to preserve them for appellate review."

12. Judge Stidham's order denying Thlothlocco's dispositive motion was interlocutory, not final. Thlopthlocco never moved for, or otherwise formally requested, Judge Stidham certify his decision for interlocutory appeal to the MCN Supreme Court, which is required by that court's Rule of Appellate Procedure 3(A).

13. Thlopthlocco filed an interlocutory appeal to the MCN Supreme Court on August 3, 2009, based upon the same jurisdictional argument it now asserts in the instant case. After this federal case was filed, the MCN Supreme Court entered an order on August 27, 2009, allowing the parties in Anderson I to brief whether the MCN Supreme Court should hear the interlocutory appeal. That order stayed further proceedings in the MCN District Court until the interlocutory appeal was denied or resolved.

14. The MCN Supreme Court has since issued an opinion and order in this appeal on March 9, 2012. The court's order reiterates its earlier holding that Thlopthlocco is "analogous to a city/state or federal/state governmental relationship"under tribal law, and notes there is no "compelling reason" raised in Thlopthlocco's second appeal to overrule its earlier decision. The MCN Supreme Court held the issues in the

5

appeal were "unripe until fact-finding is conducted and final judgment rendered" by the MCN trial court. (*Id.* at p.2.) Accordingly, the MCN Supreme Court held, as a matter of law, that the jurisdictional issues raised by Thlopthlocco were better raised in a final appeal after Thlopthlocco exhausted all remedies in the tribal district court.

15. In the Second Amended Complaint, Thlopthlocco now seeks to enjoin a second lawsuit filed by Mr. Anderson and other Thlopthlocco citizens against individual members of the Thlopthlocco Business Committee and the Thlopthlocco Election Committee – hereinafter called *"Anderson II"*. Thlopthlocco is not a party to this lawsuit.

16. After the MCN District Court entered an order requiring the individual defendants in *Anderson II* to allow Mr. Anderson and Wesley Montemayor to be placed on the Thlopthlocco election ballot, the individual defendants filed an interlocutory appeal and sought writs from the MCN Supreme Court. The tribal jurisdictional issues raised by Thlopthlocco in this federal case were also raised in its writ brief to the MCN Supreme Court.

17. As Thlopthlocco concedes in its latest amended pleading, the MCN Supreme Court did not rule on the merits of its jurisdictional argument in this particular appeal in *Anderson II*. (2nd Am. Compl. ¶16.) Rather, the tribal appellate court simply held the writ application was procedurally inappropriate because an interlocutory appeal was available to the individual defendants. The interlocutory appeal, however, had been untimely filed pursuant to MCN Supreme Court rules. In other words, the Thlopthlocco officials named as defendants still have not exhausted all available remedies in *Anderson II*, including the jurisdictional issues raised in this federal lawsuit.

II. <u>Conclusions of Law</u>

1. The Court lacks subject matter jurisdiction as no federal question exists. Intra-tribal disputes are not the subject of federal question jurisdiction. Kaw Nation v. Lugar, 378 F.3d 1139, 1143 (10th Cir. 2004).

2. Thlopthlocco predicates jurisdiction in this case upon 28 U.S.C. §§1331, 1362. (2nd Am. Compl. ¶¶ 23-24.) These statutes require the existence of a federal question before a federal court may exercise jurisdiction.

3. In paragraph 25 of the 2nd Amended Complaint, Thlopthlocco states that the "specific issue

raised in this action is the federal question of the extent of a tribal court's jurisdiction and the sovereign immunity of Thlopthlocco Tribal Town, a federally recognized Indian Tribe[.]" Paragraph 25 then cites to various federal Constitution and statutory provisions without explaining the bearing those provisions have upon Thlopthlocco's claim to immunity, or how its claim to immunity requires construction or interpretation of those provisions.

4. In *Gully v. First Nat. Bank*, 299 U.S. 109, 112-13 (1936), the Supreme Court stated that in order to plead a federal question,

> a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto . . . . (citations omitted).

5. Indian Tribal governments pre-existed the ratification of the Constitution. United States v. Wheeler, 435 U.S. 313 (1978); Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978); Talton v. Mayes, 163 U.S. 376 (1896). Tribal sovereign immunity is repeatedly recognized by Congress, see 18 U.S.C. §§2346(b)(2); 25 U.S.C. §§81, 450f©, 450 n, 2507(a)(13), 3746; 30 U.S.C. §§1300(j)(3), 1733(a)(4). Thus, while a tribe would have a federal right to enforce its immunity from suit in a federal court because of its right to be free from an unconsented suit, no similar federal right exists to prevent suit against a tribe in tribal courts – a right that arises under tribal law, not federal law.

6. In tribal sovereign immunity cases, federal statutes must contain a Congressional abrogation of tribal sovereign immunity, not a grant of immunity. Native Am. Distrib. v. Seneca-Cayuga Tobacco Co., 546 F.3d 1288 (10th Cir. 2008); Miner Elec., Inc. v. Muscogee (Creek) Nation, 505 F.3d 1007 (10th Cir. 2007). Issues regarding the nature, extent, and character of a tribal waiver of sovereign immunity in a tribal court would, be cognizable only in the tribal court as a matter of tribal law. Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 14-15 (1987); National Farmers Union Inc. Co. v. Crow Tribe, 471 U.S. 845, 857 (1985). Thus, it is clear that tribal immunity from suit in tribal courts is controlled by tribal law, not federal law. In an analogous case involving the intratribal dispute doctrine, the Tenth Circuit stated:

> Plaintiffs contend that the district court had jurisdiction to hear their case because the underlying controversy is not purely intratribal. They recite a "litany" of "actual and potential non-intratribal impact[s] of Lujan's illegal exercise of jurisdiction." But even if the effects of Lujan's exercise of judicial authority reach beyond tribal

7

> members, the underlying controversy is over whether he was properly appointed to the KNDC. To establish jurisdiction under either §1331 or §1362, Plaintiffs must point to a law that makes the appointment of Lujan-or of Morris or Tripp-a federal question. As discussed above, however, these appointments are governed by tribal rather than federal law. A dispute over the meaning of tribal law does not "arise under the Constitution, laws, or treaties of the United States," as required by 28 U.S.C. §§1331 and 1362. This is the essential point of opinions holding that a federal court has no jurisdiction over an intratribal dispute.

*Kaw Nation v. Lujan*, 378 F.3d 1139, 1143 (10th Cir. 2004) (citations omitted).

7. Likewise, a dispute over the meaning and continuing effect, if any, of the Thlopthlocco immunity waiver in the MCN courts involves solely the question of tribal law, not federal law. This is especially true once the Court considers the fact that the Anderson I defendants' claims against the individual Business Committee members are predicated solely upon alleged violations of the Thlopthlocco Constitution. Notably, the Business Committee members sought dismissal of these claims in the MCN courts because they viewed the claims as not being based on federal law (and, therefore, not authorized by Young). Likewise, the plaintiff's claims in the Anderson II suit are based on tribal law. Thus, because the scope of MCN's jurisdiction in the Anderson cases is a matter of tribal law, no federal question is, or can be, raised in this case.

8. Further, as to the specific Constitutional or federal law provisions cited by Thlopthlocco as the authority for its "federal question" of tribal sovereign immunity: Oklahoma Indian Welfare Act ("OIWA"), 25 U.S.C. §503: The OIWA states in its entirety:

> Any recognized tribe or band of Indians residing in Oklahoma shall have the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe. The Secretary of the Interior may issue to any such organized group a charter of incorporation, which shall become operative when ratified by a majority vote of the adult members of the organization voting: Provided, however, That such election shall be void unless the total vote cast be at least 30 per centum of those entitled to vote. Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984) [25 U.S.C. 461 et seq.]: Provided, that the corporate funds of any such chartered group may be deposited in any national bank within the State of Oklahoma or otherwise invested, utilized, or disbursed in accordance with the terms of the corporate charter.

9. There is no language in this statute that discusses or relates to the sovereign immunity of any Oklahoma Indian tribe, including Thlopthlocco; rather, the OIWA simply confirms the inherent right of Oklahoma Indian tribes to organize. See Cheyenne-Arapaho Tribes v. Beard, 554 F.Supp. 1, 3(W.D. Okla. 1980)(the OIWA "merely provides statutory authority for a federally recognized Indian tribe residing in Oklahoma to organize and adopt a constitution and bylaws" and does not provide any private, federal cause of action to a tribe), disagreed with on other grounds by Kaw Nation v. Springer, 341 F.3d 1186 (10th Cir. 2003).  Thus, the plain language of the OIWA does not generate any "federal question" relating to tribal sovereign immunity.  In fact, as the D.C. Circuit has held, the OIWA actually authorized the MCN to establish a judiciary to deal with tribal disputes, which would include cases such as Anderson I and Anderson II.  *See Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439 (D.C. 1998).*

10. The Indian Commerce Clause:  This clause authorizes Congress to regulate commerce "with" the Indian tribes using the same language as applicable to foreign nations, and not "among" or "of" the Indian Tribes.  The Supreme Court has held  the Clause does not confer upon the United States authority to regulate the affairs of Indians within Indian Country, *United States v. Kagama*, 118 U.S. 375, 378 (1886), though such regulation has sometimes been approved by the assertion of Congressional plenary power in Indian affairs.  *Id.*; *Lone Wolf v. Hitchcock*, 187 U.S. 553 (1903).

11.  The "central function" of the Indian Commerce Clause "is to provide Congress with plenary power to legislate in the field of Indian affairs." *United States v. Lara*, 541 U.S. 193, 200 (2004).  Thlopthlocco, however, cites no federal legislation that would prohibit the MCN tribal courts from giving effect to the consent of Thlopthlocco to suit in its courts. The Constitution "does not dictate the metes and bounds of tribal autonomy, nor [does it] suggest that the Court should second-guess" a tribal authority's power to determine its own jurisdiction. *Id.* at 205. As recognized by Thlopthlocco in Exhibit C to its Complaint (Doc. No. 02-4), at 1, Congress has already exercised its "Indian Commerce Clause" powers to appropriate funds to the MCN tribal courts to exercise jurisdiction over "intertribal" disputes, which obviously includes the *Anderson I* defendants. Accordingly, Thlopthlocco cannot, state a claim under this particular provision.  Simply stated, Thlopthlocco points to no statutory language or Constitutional provision granting it rights as against the MCN, its Courts, or its judicial officers, particularly when it invoked that authority as a plaintiff.

9

12. The Treaty Clause: According to the Supreme Court in *Lara*, the "treaty power does not literally authorize Congress to act legislatively", although "treaties made pursuant to this power can authorize Congress to deal with 'matters' with which otherwise 'Congress could not deal.'" 541 U.S. at 201. Thus, to plead a federal question under the Treaty Clause, Thlopthlocco must plead a violation of an actual treaty with Congress that restricts the relevant judicial power of the MCN. Thlopthlocco has not made any such allegation in the Second Amended Complaint.

13. The Supremacy Clause: "The Supremacy Clause, of its own force, does not create rights[;] rather, it secures federal rights by according them priority whenever they come in contact with state law." *Oklahoma Nursing Home Assoc. v. Demps*, 792 F. Supp. 721, 729 (W.D. Okla. 1992) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103 (1989)). Thus, the Supremacy Clause itself does not create a separate, independent "federal law" that can be violated by a tribe, and certainly does not grant rights against a tribe or its judicial officers who are not referred to in the clause, are not participants in the legal and political system established by the United States Constitution, and are not made subject to that clause. *E.g., United States v. Wheeler*, 435 U.S. 313 (1978); *Santa Clara Pueblo*, 436 U.S. 49; *Talton*, 163 U.S. 376; *Cherokee Nation v. Georgia*, 30 U.S. 1 (1831).

14. Review of these various provisions of federal law demonstrates Thlopthlocco has not, raised a federal question based upon the facts asserted in the Second Amended Complaint. Therefore, the Court, lacks subject matter jurisdiction.

15. Further, the Court lacks jurisdiction because the Defendants are entitled to sovereign immunity.

16. Issues related to immunity, including sovereign immunity, are threshold questions of law. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Congress has enunciated a strong interest in promoting tribal sovereignty, including developing tribal courts. *Iowa Mut. Ins. Co.*, 480 U.S. at 14-15; *see also Smith v. Moffett*, 947 F.2d 442 (10th Cir. 1991). Tribal sovereign immunity deprives this Court of subject matter jurisdiction to decide any of the other matters between the parties. *See Miner Elec.*, 505 F.3d at 1009. In deference to the strong public interest in developing tribal courts, the "federal courts have acknowledged the need to allow tribal courts to *make an initial determination of tribal jurisdiction* over matters arising on Indian [lands]." *Smith*, 947 F.2d at 444 (emphasis added).

17. In the Second Amended Complaint, Thlopthlocco sues the MCN's judges in their official capacities. In fact, the actions complained of by Thlopthlocco against the tribal jurists are actually acts of the MCN courts. (2nd Am. Compl. ¶¶39-44, 49.) A lawsuit against a government agent in his or her official capacity, however, is nothing more than a claim against the entity. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). In an official capacity lawsuit, there is no need to name the individual defendants. *Id*.

18. The rule is well-established that the MCN, acting through its judicial officers, is immune from suit as a federally recognized Indian tribe. This immunity results from the United States Supreme Court's repeated recognition of Congress's "policy of supporting tribal self-government and self-determination." *National Farmers Union,* 471 U.S. at 856; *see also Iowa Mutual,* 480 U.S. at 14 (citing cases). This includes, for instance, the federal courts' long recognition that tribal courts "play a vital role in tribal self-governance." *Iowa Mut. Ins. Co.*, 480 U.S. at 14. Thus, Indian tribal governments, such as the MCN, enjoy the same immunity from suit enjoyed by other sovereign powers and are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe,* 523 U.S. at 754.

19. Thlopthlocco also pleads its case pursuant to *Ex parte Young*, 209 U.S. 123 (1908), which authorizes prospective injunctive relief against sovereign officials who are engaged in an "ongoing violation" of federal law. (2nd Am. Compl. ¶49.) In support of this claim, Thlopthlocco alleges the exercise of jurisdiction by the MCN courts violates the Oklahoma Indian Welfare Act, 25 U.S.C. §503, as well as the Indian Commerce Clause (Art. 1, sec. 8), the Treaty Clause (Art. II, sec. 2, cl. 2), and the Supremacy Clause (Art. VI, sec. 2) of the Constitution. (2nd Am. Compl. ¶¶50-52 & p. 52, ¶2.) As noted supra, however, Thlopthlocco itself recognized in filing the *Anderson I* lawsuit in the MCN courts that "the MCN pursuant to a self-governance compact with the United States of America, received federal monies for judicial services based upon Thlopthlocco's population numbers for the benefit of Thlopthlocco people." (Compl. Ex. C (Doc. No. 02-4) at 1). This refers to the Indian Tribal Justice Act, 25 U.S.C. §§ 3601-3631, which appropriates federal money to Indian tribes, including the MCN, for the purposes of establishing self-governing tribal judicial systems.

20. According to the legislative history of the Indian Tribal Justice Act, Congress desired to recognize and protect "diversity and independence of tribal sovereignty" through their justice systems. *Id.* at 11, 1993 U.S.C.C.A.N. at 2432. For these reasons, Congress intended for "funds provided to Indian tribes under this Act [to] be used by the tribes for purposes of establishing **intertribal** court systems and regional tribal appellate systems." *Id.* at 15, 1993

U.S.C.C.A.N. at 2435 (emphasis added). Accordingly, the MCN courts are not acting in violation of federal law in exercising jurisdiction over Thlopthlocco in *Anderson I* and *II*, they are actually **following** express Congressional policy of providing an "intertribal" court system to Thlopthlocco, which has no independent judiciary.

21. Further, in reviewing the "federal law" that Thlopthlocco cites in its Second Amended Complaint, it is readily apparent that Thlopthlocco fails to state a claim under the *Ex parte Young* doctrine that the MCN courts have violated the Constitution or any federal law:

Oklahoma Indian Welfare Act ("OIWA"), 25 U.S.C. §503: As noted supra, the OIWA "merely provides statutory authority for a federally recognized Indian tribe residing in Oklahoma to organize and adopt a constitution and bylaws" and does not provide any private, federal cause of action to a tribe. *Cheyenne-Arapaho Tribes*, 554 F. Supp. at 3. Further, *Hodel, supra* (a case cited by Thlopthlocco), holds that the OIWA "can easily be established as permitting the establishment of Tribal Courts" within the MCN. 851 F.2d 1439, 1446 (D.C. Cir. 1988). Thus, the OIWA does not place any federal restriction on the jurisdiction of the MCN tribal courts, including to adjudicate the types of claims raised in *Anderson I* and *II*. In fact, according to *Hodel*, **the OIWA actually supports such authority**.

22. The Indian Commerce Clause:  As noted, the "central function" of this clause "is to provide Congress with plenary power to legislate in the field of Indian affairs." *Lara*, 541 U.S. at 200. The Constitution itself, however, "does not dictate the metes and bounds of tribal autonomy." *Id.* at 205.

23. Beyond the OIWA, which is addressed supra, Thlopthlocco does not articulate in its Second Amended Complaint any federal legislation the MCN courts have violated for purposes of its asserted *Young* claim. In reality, as noted above, Congress has already exercised its "Indian Commerce Clause" powers to appropriate funds to the MCN courts to exercise jurisdiction over "intertribal" disputes, which includes the *Anderson* cases. Accordingly, Thlopthlocco has not stated a claim under this particular provision.

24. The Treaty Clause: The "treaty power does not literally authorize Congress to act legislatively", although "treaties made pursuant to this power can authorize Congress to deal with 'matters' with which otherwise 'Congress could not deal.'" *Lara*, 541 U.S. at 201. Thus, to plead an *Ex parte Young* violation under the Treaty Clause, Thlopthlocco must plead that the tribal courts have violated an actual treaty with Congress that restricts the judicial power of the MCN. Thlopthlocco has not made any such allegation in the Second Amended Complaint.

12

25. The Supremacy Clause:  As noted, the Supremacy Clause "does not create rights[;] rather, it secures federal rights by according them priority whenever they come in contact with state law." *Oklahoma Nursing Home Assoc.*, 792 F. Supp. at 729.  Further, as indicated by the United States Supreme Court in *Green v. Mansour*, the Supremacy Clause merely "gives life" to a *Young* claim.  474 U.S. 64, 68 (1985).  Thus, the Supremacy Clause itself does not create a separate, independent "federal law" that can be violated under a *Young* analysis.  Thlopthlocco must still articulate a particular federal statute that is supreme to tribal law and one that the MCN courts have violated.  The only such law referenced by Thlopthlocco is the OIWA, which does not restrict – and actually supports – the MCN's jurisdiction over the parties in *Anderson I* and *II*.

26. Therefore, given these authorities, Thlopthlocco's attempt to plead a violation of federal law via the *Young* doctrine by the MCN courts is misplaced.  There is no Congressional restriction on the ability of the MCN tribal courts to adjudicate the *Anderson I* and *II* litigation, particularly when Thlopthlocco filed that litigation and demanded that the tribal courts exercise jurisdiction.  If anything, as noted above, the OIWA and the Indian Tribal Justice Act set forth a Congressional policy which allows the *Anderson I* and *II* cases to proceed before the MCN courts as an "intertribal" dispute.  Thus, there is no articulated ongoing violation of federal law and, therefore, no *Young* claim that can be asserted against the MCN judicial officers sued in the instant case.

27. Thlopthlocco has failed to join necessary, indispensable parties.

28. As noted above, Thlopthlocco is actually seeking relief in this case which would effectively terminate the Anderson I and II cases, thereby depriving the Anderson I defendants, and the Anderson II plaintiffs, their "day" in tribal court.  Accordingly, this Court cannot provide complete relief from any alleged harm through injunctive relief.

Fed. R.Civ.P. 19(a)(1), requires joinder of a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (I) as a practical matter impair or impede the person's ability to protect the interest, or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

29. Bringing all interested parties before the court is one of the avowed objectives of the federal rules. Atlantic City v. American Cas. Ins. Co. 254 F.Supp. 396 (D. N. J. 1966). Thus, if such a person has not been joined, Rule 19(a)(2) provides that "the court must order that person be made a party." The Tenth Circuit has held that the absent party need not "possess" an interest in the litigation for Rule 19(a) to apply, the absent party must only "claim" an interest, which includes any claimed interest that is not "patently frivolous." Davis v. United States, 192 F.3d 951, 958-59 (10th Cir. 1999).

30. The Anderson I defendants, and Anderson II plaintiffs, possess an "interest" under Rule 19(a)(1)(B) in being involved in this litigation because any injunction from this Court would impair or impede their ability to proceed before the tribal courts. As the Anderson litigation parties are necessary parties, Rule 19(a)(2) requires the Court to "order that the person [s] be made" defendants in this case.

31. Further, the MCN itself has an interest in this litigation because a ruling by this Court as to the MCN's jurisdiction could potentially affect future efforts of other branches of the MCN to exercise jurisdiction over Thlopthlocco, or other Creek tribal towns. Though the MCN is necessary to Thlopthlocco's complete relief under Rule 19(a), it is "not feasible" to join the MCN under Rule 19(b) because it also enjoys the immunities discussed above. Thus, under Rule 19(b), the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." The factors to consider are:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>     (A) protective provisions in the judgment;
>     (B) shaping relief;
>     © other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

32. Based on these factors, the MCN itself is an indispensable party and dismissal should be ordered pursuant to Rule 19(b). First, as noted, an injunction from this Court would prejudice any effort by the MCN, including its judicial officers, to exercise jurisdiction over Thlopthlocco as a Creek tribal town. Second, there is no conceivable alternative remedy in this Court that could "lessen" or "avoid" this prejudice – an injunction would terminate the *Anderson I* and *II* cases, thereby removing them completely from the jurisdiction of the MCN. Third, without any injunctive relief against

the entire MCN judiciary, nothing prevents the *Anderson I* defendants from refiling their third-party claims as a new action before the tribal courts because the Defendants have no means to prevent any such refiling. Finally, as discussed above, Thlopthlocco will not be harmed by dismissal for nonjoinder because it still has an adequate remedy in proceeding with the *Anderson I* and *II* cases before tribal court, i.e., (1) Thlopthlocco could prevail on the merits of its jurisdictional question before the MCN Supreme Court, or (2) it could prevail on the substantive merits of either of the *Anderson* cases, which would render its jurisdictional issue moot.

33. This Court must dismiss or abate this action because Thlopthlocco has failed to exhaust all tribal remedies still available to it.

34. The United States Supreme Court requires all "litigants to exhaust their tribal remedies before a district court may evaluate the existence of a tribal court's jurisdiction." *MacArthur v. San Juan County*, 497 F.3d 1057, 1065 (10th Cir. 2007) (quoting *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (citing *Iowa Mut. Ins. Co.*, 480 U.S. at 15-16)). Further, the law of the Tenth Circuit "is that a federal court should not hear a challenge to tribal court jurisdiction until tribal court remedies have been exhausted." *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169 (10th Cir. 1992). "For reasons of comity, federal courts should abstain from hearing cases that challenge tribal court jurisdiction until tribal court remedies, including tribal appellate review, are exhausted." *Id.* at 1169-70. When the doctrine applies, a district court should dismiss or abate the federal suit. *MacArthur*, 497 F.3d at 1065 (citing *National Farmers Union*, 471 U.S. at 857).

35. Thlopthlocco has not yet exhausted its tribal remedies. The law in the Tenth Circuit holds that, even if a tribal court determines it has jurisdiction at an early stage of the tribal litigation, the federal court must still abate or dismiss the jurisdictional challenge until the entire tribal litigation comes to a conclusion. *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1508 (10th Cir. 1997) ("Because of *Iowa Mutual*'s expansive abstention, we are required to allow **full** exhaustion of tribal court litigation, potentially **including litigation of the merits**.") (emphasis added). In fact, when the underlying dispute involves internal tribal matters, the exhaustion rule is "an inflexible bar to consideration of the merits of the petition by the federal court." *Texaco, Inc. v. Zah*, 5 F.3d 1374, 1378 (quoting *Smith v. Moffet*, 947 F.2d 442, 445 (10th Cir. 1991)).

36. Applying these rules to the instant case, in *Anderson I*, Thlopthlocco consented to the jurisdiction of the MCN courts up until the time it filed its "conditional" motion to dismiss in June 2009. That particular pleading was

15

denied in an interlocutory decision by Judge Stidham. While Thlopthlocco unsuccessfully appealed that decision, the holding of the MCN Supreme Court in the *Anderson I* appeal does not definitively conclude the Creek tribal courts have jurisdiction over Thlopthlocco's disputes. The tribal appellate court merely determined Thlopthlocco had not offered any "compelling reason" in its renewed appeal to counter its earlier submission to tribal jurisdiction in the Creek courts. (Ex. R to 2nd Am. Compl. (Doc. No. 47-3)).

37. Further, the MCN Supreme Court's Rule of Appellate Procedure 3© states that "[i]ssues not raised or decided in an interlocutory appeal may be considered in an appeal after the final judgment or order." As held by the Ninth Circuit in *Elliott v. White Mountain Apache Tribal Court*, 566 F.3d 842, 847 (9th Cir. 2009), the denial of an interlocutory appeal is not a full exhaustion of tribal remedies. As noted, Thlopthlocco also "reserved the right" to appeal the jurisdictional question in its conditional motion to dismiss to the MCN Supreme Court. (Ex. 5 at p. 8.) Thus, Thlopthlocco's more recent jurisdictional arguments are preserved through the trial and any appeal of right in the *Anderson I* litigation.[1]

38. The same analysis also applies to *Anderson II*. Notably, in *Anderson II*, the individual defendants have not resolved the jurisdictional issue at all. While those defendants have challenged the MCN tribal court's jurisdiction through a motion to dismiss, they failed to timely file an interlocutory appeal of the MCN trial court's determination it possessed jurisdiction over them. Thus, the final issue of the MCN's jurisdiction over the individual defendants in *Anderson II* remains unexhausted.

39. Finally, it must be noted the exhaustion rule is based on three "specific interests" to be advanced in application of the rule:

> (1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary.

40. *Kerr-McGee Corp. v. Farley*, 115 F.3d at 1507. These factors apply to this case. First, allowing the

---

[1] As further reason why the Court should abate this matter, if Thlopthlocco ultimately wins the *Anderson I* and *II* cases on the merits, the jurisdictional issues in this case would be moot.

*Anderson I* and *II* cases to progress to their conclusion furthers Congress's policy of supporting an independent tribal judiciary. *See* 25 U.S.C. § 3601 (listing purposes of Indian Tribal Justice Act, including that "tribal justice systems are an essential part of tribal governments and serve as important forums for ensuring public health and safety and the political integrity of tribal governments");*Hodel*, 851 F.2d at 1446 (OIWA authorizes MCN to establish its own court system). Second, the *Anderson* litigation parties have not yet allowed the tribal courts to develop a full record as to the underlying litigation, which would assist this Court in any future review of the jurisdictional issues raised by Thlopthlocco. Third, as shown by the extensive history presented by Thlopthlocco in its 59-page, multi-exhibit Second Amended Complaint, it would be more appropriate for this Court to allow the MCN tribal courts to evaluate the history presented and weigh its effect on jurisdiction over the parties in the two *Anderson* lawsuits.

41. In sum, there is no final decision by the tribal courts as to whether they still retain jurisdiction over the *Anderson I* "cross-defendants" and *Anderson II* defendants. Further, as the above-quoted authorities hold, the exhaustion rule is "inflexible" in requiring the tribal court litigation to reach its final conclusion on the merits before this Court could conceivably rule on the tribal court's jurisdiction. Accordingly, this Court should dismiss or abate this action until any such final decision is rendered.

### III. Conclusion

As Thlopthlocco has admitted, the underlying tribal disputes are based solely on tribal law. As such there is no existing federal question in this case, and this Court lacks subject matter jurisdiction. In addition, Defendants enjoy sovereign immunity as judicial officers of the MCN. Thlopthlocco's attempt to bypass those immunities by alleging a violation of federal law under the *Ex parte Young* doctrine fails because Thlopthlocco has not sufficiently explained in its amended pleading how the MCN courts have violated any such federal law.

Further, Thlopthlocco has failed to join necessary parties. Most important, Thlopthlocco has not joined the *Anderson I* defendants and *Anderson II* plaintiffs, who are the real parties in interest and would be most affected by any equitable relief issued by this Court, i.e., their claims in the tribal courts would be enjoined as well. Additionally, even though Thlopthlocco's claims are actually against the MCN in general, it has failed to join the

MCN, which has an interest in the jurisdictional question raised by Thlopthlocco in *Anderson I* and *II*. The MCN, however, while an indispensable party, also has immunity from this suit.

Finally, Thlopthlocco clearly has failed to exhaust the tribal remedies available to it in the MCN courts. The underlying tribal jurisdictional issue is still preserved for appeal in *Anderson I* and *II*. Tenth Circuit law is also clear that Thlopthlocco must wait until conclusion of the merits in Anderson I and II before complaining to this Court.

Accordingly, Defendants' Motion to Dismiss is granted.

*[signature]*
James H. Payne
United States District Judge
Northern District of Oklahoma