## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**THLOPTHLOCCO TRIBAL TOWN,**
a federally recognized Indian Tribe,

      **Plaintiff,**

v.

**ROGER WILEY, RICHARD C. LERBLANCE, AMOS McNAC, ANDREW ADAMS III, KATHLEEN R. SUPERNAW, MONTIE R. DEER, GEORGE THOMPSON JR., and LEAH HARJO-WARE,**

      **Defendants.**

**Court No. 4:09-CV-00527-JCG-CDL**

## <u>OPINION AND ORDER</u>

This action addresses sixteen years of litigation between the Thlopthlocco Tribal Town ("Plaintiff"), the judges of the Muscogee (Creek) Nation Courts, and other members of the Thlopthlocco Tribal Town, arising from an attempted coup d'état after Thlopthlocco Tribal Town elections in 2007. For the reasons stated below, the Court grants Plaintiff's motion for declaratory judgment and holds that the Thlopthlocco Tribal Town is entitled to sovereign immunity in the Muscogee (Creek) Nation Courts and may, if it chooses, waive its sovereign immunity to submit to the jurisdiction of Muscogee (Creek) Nation Courts. Furthermore, the

Court holds that under appropriate circumstances, the Thlopthlocco Tribal Town

may withdraw its waiver of sovereign immunity.  The Court denies Defendants'

motion to dismiss.

The Thlopthlocco Tribal Town filed Plaintiff Thlopthlocco's Statement of

Position and Motion for Declaratory Judgment and Brief in Support (Summary

Judgment) seeking a declaratory judgment that the Thlopthlocco Tribal Town is

entitled to sovereign immunity, may waive such immunity voluntarily to submit to

the jurisdiction of the Muscogee (Creek) Nation Courts, and may withdraw its

waiver of sovereign immunity under appropriate circumstances.  Pl.'s Mot.

Declaratory J. (Summary J.) [Doc. 176].  Defendants Roger Wiley (Chief Judge of

the Muscogee (Creek) Nation District Court), Richard C. Lerblance (Chief Justice

of the Supreme Court of the Muscogee (Creek) Nation), Amos McNac (Vice-Chief

Justice of the Supreme Court of the Muscogee (Creek) Nation) and Andrew Adams

III, Kathleen R. Supernaw, Montie R. Deer, George Thompson, Jr., and Leah

Harjo-Ware (Justices of the Supreme Court of the Muscogee (Creek) Nation)

(collectively, "Defendants") filed Defendants-Appellees' Combined Motion and

Opening Brief in Support of Dismissal for Lack of Jurisdiction.  Defs.' Mot.

Dismiss [Doc. 177].  Defendants argue that the decision of the Supreme Court of

the Muscogee (Creek) Nation ("Muscogee (Creek) Nation Supreme Court") states

clearly that the Thlopthlocco Tribal Town is entitled to sovereign immunity in the Muscogee (Creek) Nation Courts, thereby making this case moot.

This case was reassigned to the undersigned judge sitting by designation on February 27, 2023.  Min. Order [Doc. 173].  The Court held oral argument on September 21, 2023.  Min. Proceeding [Doc. 194].

## BACKGROUND

### I.   Tribal History

The Thlopthlocco Tribal Town is a town of Creek Indians who originated from Mexico and migrated to present-day Georgia and Alabama in the 1500s, where they resided until relocated forcibly in the 1820s and 1830s.  Thlopthlocco Tribal Town v. Stidham, 762 F.3d 1226, 1229 (10th Cir. 2014).  Historically, Creek Indians have governed themselves through tribal towns known as *talwa*.  Id. Members of a *talwa* lived together, but their membership was determined by ancestry, rather than geography.  Id.  Beginning in the 1820s and 1830s, the *talwa* commenced a unification process through which they entered into treaties with the United States Government and adopted a single constitution.  Id.  Although Creek Indians opposed centralization initially, they finally became a single Creek government after the American Civil War.  Id. (quoting Frederic Kirgis, Memorandum to the Commissioner of Indian Affairs 1 (July 15, 1937)).

3

In 1867, the Creek Indians revised their constitution and created a centralized government similar to that of the United States' federal structure.  Id. Each *talwa* continued to govern itself much like a state.  Id.  The 1867 constitution remained the Creek Indians' governing document until 1907.  Id.  From 1907 to 1936, the *talwa* were governed by the state of Oklahoma and the counties where each *talwa* was located.  Id. at 1230.  In 1936, Congress enacted the Oklahoma Indian Welfare Act ("OIWA").  Id.  The OIWA invited any recognized Indian tribe or band residing in Oklahoma to adopt a constitution and bylaws and be acknowledged accordingly by a federal charter of incorporation.  Id.  The Thlopthlocco Tribal Town was one of the three *talwa* that sought and received federal charters in the years immediately following the OIWA's enactment.  Id. After creating its own constitution, the Thlopthlocco Tribal Town received its federal charter of incorporation and became a federally recognized tribe in 1939. Id.  The Muscogee (Creek) Nation became a Creek Indian tribe recognized under the OIWA in 1979, but the Thlopthlocco Tribal Town continued to be independent. Id.  Members of the Thlopthlocco Tribal Town are eligible for membership in the Muscogee (Creek) Nation.  Id.

Today, the Thlopthlocco Tribal Town has a ten-member Business Committee in which it vests the power to govern.  Id.  The Business Committee is comprised of five elected town officers and five advisors appointed by the elected

4

officials.  Id.  The Thlopthlocco Tribal Town holds elections every four years.  Id.

If a position becomes vacant between elections, the remaining elected officials

have the authority to fill the vacancy.  Id.  The Thlopthlocco Tribal Town members

may also remove a Business Committee member by a majority vote.  Id.  Despite

having its own constitution and governing structure, the Thlopthlocco Tribal Town

does not have a judiciary of its own because it has not acquired the necessary

federal funding.  Id.  The Bureau of Indian Affairs provides federal funding that

allows members of the Thlopthlocco Tribal Town to utilize the Muscogee (Creek)

Nation Courts.  Id.

## II.    Factual and Procedural Background

In June 2007, Nathan Anderson ("Anderson") was elected Town King of the

Thlopthlocco Tribal Town and attempted a coup d'état by declaring himself the

only legitimate elected official and deeming all other offices of the Thlopthlocco

Tribal Town's Business Committee vacant.  Id. at 1232.  The Thlopthlocco Tribal

Town filed an action in Muscogee (Creek) Nation District Court against Anderson

for declaratory and injunctive relief.  Id.; Thlopthlocco Tribal Town v. Anderson

("Anderson I"), CV-2007-39.  The Thlopthlocco Tribal Town adopted a limited

consent and waiver of sovereign immunity that excluded election disputes.

Thlopthlocco Tribal Town, 762 F.3d at 1232.  The Muscogee (Creek) Nation

District Court determined initially that it lacked jurisdiction to hear the matter and

urged the Thlopthlocco Tribal Town to resolve the issues internally.  Id.  The Muscogee (Creek) Nation Supreme Court reversed the Muscogee (Creek) Nation District Court's initial decision, however, holding that the Thlopthlocco Tribal Town was subject to the jurisdiction of Muscogee (Creek) Nation Courts because it is a Muscogee (Creek) Nation town.  Id.

Anderson then filed crossclaims against the Business Committee members on grounds of election fraud and violation of the Thlopthlocco Tribal Town's constitution.  Id.  The parties resolved some of the issues by removing Anderson from office according to the Thlopthlocco Tribal Town's constitution.  Id. However, Anderson continued to pursue his crossclaims.  Id.  The Thlopthlocco Tribal Town filed a motion to dismiss its suit and withdrew its waiver of sovereign immunity, but the Muscogee (Creek) Nation District Court denied the motion, holding that it had jurisdiction to hear Anderson's crossclaims despite the Thlopthlocco Tribal Town's withdrawal of its waiver of sovereign immunity.  Id. The Thlopthlocco Tribal Town filed an interlocutory appeal with the Muscogee (Creek) Nation Supreme Court, which denied the appeal and held that under tribal law, the Thlopthlocco Tribal Town was part of the Muscogee (Creek) Nation.  Id.

In a new election cycle in 2011, the Thlopthlocco Tribal Town excluded Anderson and other individuals from the election ballot.  Id.  This led to Anderson and the other individuals filing another crossclaim against the Business Committee.

6

Id.; Anderson v. Burden ("Anderson II"), CV-2011-08.  The Business Committee filed a motion to dismiss for lack of jurisdiction, but the Muscogee (Creek) Nation District Court denied the motion and ordered that the Thlopthlocco Tribal Town proceed with the election and include Anderson and his co-plaintiffs on the ballot. Thlopthlocco Tribal Town, 762 F.3d at 1232.  The Thlopthlocco Tribal Town filed a lawsuit against the Muscogee (Creek) Nation's judicial officials in the United States District Court Northern District of Oklahoma ("District Court").[1]  Id.

Plaintiff sought to enjoin the Muscogee (Creek) Nation's judicial officials from exercising jurisdiction over the Thlopthlocco Tribal Town's elections and procedures.  Id.  The District Court dismissed the Thlopthlocco Tribal Town's lawsuit for lack of subject matter jurisdiction and granted the Muscogee (Creek) Nation's judicial officials' motion to dismiss.  Id. at 1232–33.  The District Court held that the Muscogee (Creek) Nation's judicial officials were entitled to sovereign immunity, and that the Thlopthlocco Tribal Town failed to join indispensable parties and exhaust its remedies in the Muscogee (Creek) Nation Courts.  Id.  The Thlopthlocco Tribal Town appealed the District Court's decision to the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit Court of Appeals").  Id.

---

[1]  Thlopthlocco Tribal Town v. Stidham, 2013 U.S. Dist. LEXIS 539 (N.D. Okla. Jan. 3, 2013), aff'd in part, rev'd in part and remanded, 762 F.3d 1226 (10th Cir. 2014).

On September 3, 2014, the Tenth Circuit Court of Appeals reversed the District Court's decision, concluding that the question of whether a tribal court has jurisdiction over a non-member tribe should be decided under federal common law and is within the subject matter jurisdiction of the District Court. Id. at 1234. The Tenth Circuit Court of Appeals concluded that the Thlopthlocco Tribal Town pled sufficiently that it is a separate and independent Indian tribe beyond the reach of the Muscogee (Creek) Nation Courts' jurisdiction. Id. The Tenth Circuit Court of Appeals issued a remand to the District Court for additional proceedings to join necessary parties and abate further proceedings until the Thlopthlocco Tribal Town exhausted its tribal court remedies. Id. at 1242.

Plaintiff filed Plaintiff's Motion to Join MCN Judicial Officials and Brief in Support ("Pl.'s Mot. Joinder"), in which Plaintiff sought to join six Muscogee (Creek) Nation judicial officials as well as Anderson I defendants and Anderson II plaintiffs. Pl.'s Mot. Joinder [Doc. 86]. Defendants filed their Joint Motion to Stay Consideration of Remanded Joinder Issues. Defs.' Mot. Stay Remanded Joinder [Doc. 87]. On December 30, 2014, the District Court abated further proceedings and remanded the matter to the tribal courts. Pl.'s Mot. Declaratory J. (Summary J.) at 9. The District Court also entered orders joining members of the Muscogee (Creek) Nation judiciary and staying the remainder of the joinder issues

until after tribal exhaustion was completed.  Order Pl.'s Mot. Joinder [Doc. 88];

Min. Order Defs.' Mot. Stay Remanded Joinder [Doc. 89].

On May 24, 2021, the Muscogee (Creek) Nation District Court issued its

decision.  Pl.'s Mot. Declaratory J. (Summary J.) at 9.  The Muscogee (Creek)

Nation District Court dismissed Anderson I, finding that Anderson was no longer a

credible threat to Plaintiff's government, thereby making the case no longer

justiciable.  Muscogee (Creek) Nation Dist. Ct. Decision at 19 [Doc. 159-1].

Regarding Anderson II, the Muscogee (Creek) Nation District Court held that the

Thlopthlocco Tribal Town could not rely on sovereign immunity to remove

Anderson and other individuals from its election ballots.  Id. at 19–20.  The

Muscogee (Creek) Nation District Court concluded that it had both personal and

subject matter jurisdiction over Anderson II.  Id. at 17.

On appeal, the Muscogee (Creek) Nation Supreme Court held that the

Thlopthlocco Tribal Town is entitled to sovereign immunity in the Muscogee

(Creek) Nation Courts.  Muscogee (Creek) Nation Sup. Ct. Decision at 17–22

[Doc. 168-04].  The Muscogee (Creek) Nation Supreme Court also held that the

Thlopthlocco Tribal Town could submit itself voluntarily to the jurisdiction of the

Muscogee (Creek) Nation Courts.  Id. at 22.  Concluding that the Thlopthlocco

Tribal Town waived its sovereign immunity in Anderson I, the Muscogee (Creek)

Nation Supreme Court affirmed the Muscogee (Creek) Nation District Court's

decision to dismiss <u>Anderson I</u> and held that the Muscogee (Creek) Nation Courts had exercised proper jurisdiction over the case in its entirety.  <u>Id.</u> at 23.

Regarding <u>Anderson II</u>, the Muscogee (Creek) Nation Supreme Court reversed the Muscogee (Creek) Nation District Court's decision, holding that Anderson's crossclaims extended outside the scope of the initial injunction action, <u>Anderson I</u>.  <u>Id.</u> at 23–25.  Relying on and comparing the facts of this case to <u>Thlopthlocco Tribal Town v. Tomah</u> ("<u>Tomah I</u>"), 8 Okla. Trib. 576 (Mus. (Cr.) D. Ct. 2004), the Muscogee (Creek) Nation Supreme Court held that the Muscogee (Creek) Nation Courts did not have jurisdiction because the Thlopthlocco Tribal Town's waiver did not extend to the issues in <u>Anderson II</u>.  Muscogee (Creek) Nation Sup. Ct. Decision at 24–25.  Therefore, the Muscogee (Creek) Nation Supreme Court reversed the Muscogee (Creek) Nation District Court on its ruling regarding <u>Anderson II</u>.  <u>Id.</u> at 25.  Neither tribal court addressed the issue of whether the Tribal Town could withdraw its waiver of sovereign immunity under appropriate circumstances.

The Tribal Town now returns to the District Court, seeking a declaratory judgment that (1) it enjoys sovereign immunity in the Muscogee (Creek) Nation Courts and may, if it chooses, consent to such jurisdiction; and (2) it may withdraw its waiver of sovereign immunity and consent to jurisdiction under appropriate circumstances.  Defendants filed a motion to dismiss for lack of subject matter

jurisdiction, arguing that this case is moot and that any opinion by this Court would be advisory.  Defs.' Mot. Dismiss at 14–18.

## JURISDICTION

The Court begins by addressing the threshold question of whether there is subject matter jurisdiction.  Under Article III of the Constitution, the court's subject matter jurisdiction is limited to live cases or controversies, ensuring that courts determine only real disputes.  Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 199 (2023).  To prove that the case is a real dispute, a litigant must prove that it has suffered some actual injury that can be redressed by a favorable decision.  Audubon of Kansas, Inc. v. U.S. Dep't of Interior, 67 F.4th 1093, 1102 (10th Cir. 2023).  When the litigant no longer suffers an actual injury that can be remedied by a favorable decision, the case becomes moot.  Rhodes v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2012).  The doctrine of mootness ensures that a matter remains a live case at the time a court renders its decision on the issues.  Brown v. Buhman, 822 F.3d 1151, 1163 (10th Cir. 2016).  To determine whether there remains a live case, a court ascertains whether the issues offer some effect in the real world.  Audubon of Kansas, Inc., 67 F.4th at 1102.  If a plaintiff retains a concrete interest in the outcome, even if it is small, the case is not moot.  Id.

## I.      Live Case or Controversy

Defendants argue that there is no live case or controversy because the
Muscogee (Creek) Nation Supreme Court pronounced that as a matter of both
tribal and federal law, the Thlopthlocco Tribal Town is entitled to sovereign
immunity in the Muscogee (Creek) Nation Courts.  Defs.' Mot. Dismiss at 14–15.
Because of the Muscogee (Creek) Nation Supreme Court's pronouncement,
Defendants assert that this case is prudentially moot because Plaintiff's request for
declaratory judgment will not result in any real-world benefits and will burden
tribal comity and resources significantly.  Id. at 16–18.  Defendants also contend
that Plaintiff's declaratory relief is constitutionally moot because the Muscogee
(Creek) Nation Courts have ceased to exercise jurisdiction over the Thlopthlocco
Tribal Town.  Id. at 16.

To the contrary, the Court concludes that a live case exists because the
question of whether the Muscogee (Creek) Nation Courts may exercise jurisdiction
over the Thlopthlocco Tribal Town after withdrawing its sovereign immunity
waiver has not yet been resolved.  The resolution of this question offers a real-
world effect because Plaintiff has a concrete interest in knowing whether the
Thlopthlocco Tribal Town may continue to rely on Chapter 9 of its Election
Ordinance ("Chapter 9") when it waives its sovereign immunity to submit to the
jurisdiction of the Muscogee (Creek) Nation Courts.  Chapter 9 provides:

> In the sole discretion of the Business Committee, it may initiate a court action to be filed in a court of appropriate venue selected in its sole choice. . . . In such instance, the Business Committee shall . . . , determine and state the extent of consent to jurisdiction of the judicial forum.
>
> . . . .
>
> The Business Committee *shall be entitled to withdraw any such consent to jurisdiction in the event the selected judicial forum exceeds the consent to jurisdiction authorized by the Business Committee*, and the action of such judicial body in excess of the consent to jurisdiction shall be treated as a nullity by Thlopthlocco Tribal Town Law. Iowa Tribe of Kansas & Nebraska v. Salazar [("Iowa Tribe")], 607 F.3d 1225, 1233–34 (10th Cir. 2010) (a "sovereign . . . may prescribe the terms and conditions on which it consents to be sued, . . . the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it"); Beers v. Arkansas, 61 U.S. 527, 529 (1857).

Pl.'s Mot. Declaratory J. (Summary J.) at App. 14 (emphasis added). The Thlopthlocco Tribal Town relied on this ordinance in making the decision to withdraw Anderson I, when the Thlopthlocco Tribal Town determined that the Muscogee (Creek) Nation Courts had exceeded the jurisdictional limits of the Thlopthlocco Tribal Town's waiver of sovereign immunity. When the Muscogee (Creek) Nation Courts continued to exercise jurisdiction, the Thlopthlocco Tribal Town brought suit before the District Court to resolve, among other questions, the issue of whether the Muscogee (Creek) Nation Courts may continue to exercise jurisdiction after the Thlopthlocco Tribal Town withdrew its waiver of sovereign immunity.

The Tenth Circuit Court of Appeals remanded the case to the tribal courts anticipating that the federal courts might benefit from the Muscogee (Creek)

Nation Courts' analysis on this issue because of any differences between the federal and tribal laws that govern waivers of sovereign immunity.  Thlopthlocco Tribal Town, 762 F.3d at 1240.  The Muscogee (Creek) Nation Courts did not address this issue, however, and dismissed Anderson I on other grounds.  By dismissing the case without addressing the issue, the Muscogee (Creek) Nation Courts left a live case for this Court to address.  Because there remains a live case and Plaintiff has a concrete interest in the outcome, the Court concludes that it has Article III subject matter jurisdiction.

## II.     Mootness Exception: Capable of Repetition Yet Evading Review

Alternatively, even if the Court were to accept Defendants' argument that Plaintiff's declaratory relief claim is constitutionally moot, an exception to mootness applies when an issue is "capable of repetition yet evading review." Under this exception, questions under review are not moot if they satisfy two elements: the question must be of the kind that (1) evades review because its duration as part of the challenged action is too short to be fully litigated prior to its cessation or expiration, and (2) is capable of repetition, resulting in a reasonable expectation that the same plaintiff will be subjected to the same action again. Robert v. Austin, 72 F.4th 1160, 1164–65 (10th Cir. 2023) (citing Fleming v. Gutierrez, 785 F.3d 442, 445 (10th Cir. 2015)).

14

### A.   Duration of Litigated Issue

To satisfy the first element of the exception to mootness, a litigant must proffer evidence from which the court can infer that the behavior in question is necessarily of short duration.  <u>Wyoming v. U.S. Dep't of Interior</u>, 674 F.3d 1220, 1229 (10th Cir. 2012) (citing <u>Jordan v. Sosa</u>, 654 F.3d 1012, 1034–35 (10th Cir. 2011)).  An issue that is of short duration by its very nature is one that "could not, or probably would not be adjudicated while fully 'live.'"  <u>Id.</u> at 1229 (quoting <u>Dow Chemical Co. v. EPA</u>, 605 F.2d 673, 678 n. 12 (3d Cir. 1979)).  The Tenth Circuit Court of Appeals has recognized that cases involving election disputes readily satisfy this element because of the short time frame of election cycles.  <u>See</u> <u>Rio Grande Found. v. Oliver</u>, 57 F.4th 1147, 1166 (10th Cir. 2023) ("Challenges to election laws may readily satisfy the first element, as injuries from such laws are capable of repetition every election cycle yet the short time frame of an election cycle is usually insufficient for litigation in federal court.").

Defendants argue that Plaintiff cannot prove that its claim is based on an issue that has a short duration because the tribal courts' exercise of jurisdiction was not necessarily short in duration or fleeting.  Defs.' Mot. Dismiss at 19.  Defendants also argue that the tribal courts' assertion of jurisdiction over Plaintiff did not end too quickly to be fully litigated in the federal courts.  <u>Id.</u>  To support their arguments, Defendants contend that this case continued for at least thirteen

years after the Thlopthlocco Tribal Town withdrew its waiver of sovereign immunity.  Id.  Defendants assert that by the time the case was resolved by the Muscogee (Creek) Nation Supreme Court, it had been pending in federal court for nearly a decade.  Id.

Plaintiff counters that the Muscogee (Creek) Nation District Court did not recognize Plaintiff's claims early, delayed the case significantly after the federal court's abatement for tribal exhaustion (the Tenth Circuit Court of Appeals issued its remand in 2014 and the Muscogee (Creek) Nation District Court delayed seven years before issuing its opinion in 2021), and ruled on the pending issues in a manner that could moot the case.  Pl.'s Reply Defs.' Resp. Pl.'s Mot. Declaratory J. (Summary J.) at 7–8 [Doc 184].

Although Anderson I took sixteen years to resolve, the nature of the Muscogee (Creek) Nation Courts' assertion of jurisdiction was too short to be fully litigated by this Court.  The case was short by its nature because the issues over which the Muscogee (Creek) Nation Courts asserted jurisdiction stemmed from an election dispute in Anderson I's crossclaims.  The short duration is demonstrated by the fact that the election disputes were no longer justiciable by the time the Muscogee (Creek) Nation District Court decided the case after a long delay of seven years, and Anderson was no longer a threat to the Thlopthlocco Tribal Town. The Court observes that the federal case was abated in the District Court for the

16

Thlopthlocco Tribal Town to exhaust its tribal remedies, thus delaying the resolution of the issue in federal court regarding the effect of the Thlopthlocco Tribal Town's withdrawal of its waiver of sovereign immunity on the tribal courts' jurisdiction.  Because this issue could not be litigated in the District Court while the underlying case was fully live, it was by its nature too short in duration. Therefore, the first element of the mootness exception is satisfied.

### B.    Expectation of Repetition

To satisfy the second element of the mootness exception, a party must show that there is a reasonable expectation of repetition that goes beyond a hypothetical possibility.  Nathan M. v. Harrison Sch. Dist. No. 2, 942 F.3d 1034, 1042 (10th Cir. 2019).  To prove a reasonable expectation of repetition, a party must demonstrate that it will be subjected to the same action again because of the action's potential to recur.  Id.

The Court concludes that Plaintiff has demonstrated that there is a reasonable expectation that it will be subjected to the same action again because the Thlopthlocco Tribal Town does not have a judiciary of its own.  There is a reasonable expectation that the Thlopthlocco Tribal Town will submit future legal disputes to the jurisdiction of the Muscogee (Creek) Nation Courts as the sole legal venue available, the Thlopthlocco Tribal Town is likely to waive its sovereign immunity when bringing future disputes before the Muscogee (Creek) Nation

Courts, and the Thlopthlocco Tribal Town is likely to withdraw its waiver of sovereign immunity under certain circumstances.  Thus, legal challenges to the Muscogee (Creek) Nation Courts' exercise of jurisdiction have the potential to recur if this Court does not resolve the issue of whether the Thlopthlocco Tribal Town may withdraw its waiver of sovereign immunity.  The issue has potential to recur because, in submitting to the jurisdiction of the Muscogee (Creek) Nation Courts, the Thlopthlocco Tribal Town relies on Chapter 9 of its Election Ordinance to initiate a court action and set the limits for its waiver of sovereign immunity. Chapter 9 allows the Thlopthlocco Tribal Town's Business Committee to "withdraw any such consent to jurisdiction in the event the selected judicial forum exceeds the consent to jurisdiction authorized by the Business Committee, and the action of such judicial body in excess of the consent to jurisdiction shall be treated as a nullity by Thlopthlocco Tribal Town Law."  Pl.'s Mot. Declaratory J. (Summary J.) at App. 14.  Because Chapter 9 permits the Business Committee to issue waivers of sovereign immunity and allows for the withdrawal of such waivers, there is a reasonable expectation that Plaintiff will raise the issue of withdrawal and be subjected to a similar lawsuit as the current one if its withdrawal of a waiver of sovereign immunity is not accepted.  Therefore, the Court concludes that the Thlopthlocco Tribal Town's claim survives mootness because the "capable of repetition, yet evading review" exception applies.

18

## ANALYSIS

Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The movant bears the burden of making a prima facie demonstration regarding absence of a genuine issue of material fact.  In re Rumsey Land Co., 944 F.3d 1259, 1270–71 (10th Cir. 2019).  The Thlopthlocco Tribal Town stated that it is moving "for declaratory judgment by summary judgment."  Pl.'s Mot. Declaratory J. (Summary J.) at 1.  An examination of the filings of both parties shows that there is no dispute of material facts.  The Thlopthlocco Tribal Town's claim for relief is based on declaratory relief and makes no mention of a claim under the summary judgment standard.  Because the true nature of Plaintiff's claim is for declaratory relief, the Court proceeds under a declaratory judgment motion rather than a summary judgment motion.

## I.    Declaratory Judgment Standard of Review

Whether to entertain a declaratory judgment action is a matter committed to the trial court's sound discretion.  Kunkel v. Cont'l Cas. Co., 866 F.2d 1269, 1274 (10th Cir. 1989) (citing Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 462 (1945)).  When deciding whether to hear a declaratory judgment action, a court weighs the following factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal

relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata;" (4) whether use of a declaratory action would increase friction between federal and state courts and encroach upon state jurisdiction improperly; and (5) whether there is an alternative remedy that is better or more effective.  St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995) (citing State Farm Fire & Cas. Co. v. Mhoon ("Mhoon"), 31 F.3d 979, 983 (10th Cir. 1994)).  Declaratory judgment that is otherwise appropriate is not precluded by the existence of another adequate remedy.  Fed. R. Civ. P. 57.

## II.     Declaratory Judgment Factors

### A.     Declaratory Action Potential to Settle the Controversy

To determine whether a declaratory action is appropriate, the first factor that a court must consider is whether the declaratory action would settle the controversy, or whether the exercise of its jurisdiction would be "unnecessarily duplicative and uneconomical" because of another parallel action that gives a party the opportunity to raise the question at issue.  See Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, 685 F.3d 977, 982 (10th Cir. 2012) (holding that the district court did not abuse its discretion when it weighed this factor against exercising jurisdiction because the declaratory action would not resolve all the issues that were presented in a parallel state court case).  It is economical for a

federal court to entertain a declaratory judgment action that is governed by federal law.  United States v. City of Las Cruces, 289 F.3d 1170, 1183 (10th Cir. 2002) (citing Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942)).  When there is no parallel proceeding, it is an abuse of discretion for a district court to dismiss a federal declaratory judgment action.  Id.

Plaintiff seeks a declaratory judgment because the underlying tribal action was dismissed without fully addressing the issue of whether the Thlopthlocco Tribal Town, in addition to enjoying sovereign immunity and waiving it to consent to jurisdiction in the Muscogee (Creek) Nation Courts, may withdraw its sovereign immunity waiver under appropriate circumstances.  Pl.'s Mot. Declaratory J. (Summary J.) at 15–18.  Because the underlying action was dismissed without answering this question, there remains no parallel tribal proceeding through which Plaintiff has an opportunity to settle the controversy.  Without a parallel proceeding, this Court's exercise of jurisdiction will not be unnecessarily duplicative or uneconomical because the question presented has not been fully addressed.  The Court's exercise of jurisdiction is economical because the question of whether a tribal court has jurisdiction over a non-member is decided under federal common law.  Thlopthlocco Tribal Town, 762 F.3d at 1233–34.  The Court concludes that the first factor weighs in favor of a declaratory action.

**B.     Declaratory Action Purpose in Clarifying the Legal Issues**

The second factor of whether a declaratory judgment would serve a useful

purpose in clarifying the legal relations at issue is tied closely to the first factor

because both factors require some degree of similarity between the parties and

issues presented in concurrent proceedings.  City of Las Cruces, 289 F.3d at 1183.

When there is no parallel proceeding, the federal declaratory action serves a useful

purpose in settling a controversy.  Id.  The Tenth Circuit Court of Appeals has held

that a federal declaratory action serves some useful purpose when a state

proceeding is dismissed without adjudicating the issue before the federal court.  Id.

As discussed above, there is no parallel proceeding, and the tribal action was

dismissed without addressing the question of whether the Thlopthlocco Tribal

Town may withdraw its consent to jurisdiction under appropriate circumstances.  A

declaratory action would serve a useful purpose of clarifying the circumstances

under which the Thlopthlocco Tribal Town may withdraw its sovereign immunity

waiver appropriately.  The Court concludes, therefore, that the second factor

weighs in favor of a declaratory action.

**C.     Use of the Declaratory Action for Purposes of Procedural
        Fencing and Res Judicata**

For the third factor of whether a party is using a declaratory action for

purposes of procedural fencing, the court examines the motives of the seeking

party and whether it seeks a procedural advantage in another pending litigation.

Mid-Continent Cas. Co., 685 F.3d at 984; see St. Paul Fire & Marine Ins. Co., 53 F.3d at 1170 (holding that a party used procedural fencing when it filed its federal action knowingly one day before the other party filed its state action and waited three years before seeking a declaratory action).  A party seeking declaratory judgment is usually accused of procedural fencing when it engages in questionable actions.  Mid-Continent Cas. Co., 685 F.3d at 984.

The record does not demonstrate that the Thlopthlocco Tribal Town engaged in questionable behavior in filing its declaratory action, and Defendants do not raise such an issue.  Plaintiff seeks a declaratory judgment because it believes that the ability to withdraw its consent to litigation is necessary for its full exercise of sovereign immunity.  Pl.'s Reply Defs. Resp. Pl.'s Mot. Declaratory J. (Summary J.) at 2.  This motive does not suggest that the Thlopthlocco Tribal Town seeks to gain a procedural advantage in another pending tribal action, especially because the underlying action was dismissed.  The dismissal of the underlying action also weighs against a finding that Plaintiff is engaging in a race to res judicata because there is no pending tribal action in which Plaintiff will gain a procedural advantage.  The Thlopthlocco Tribal Town does not have a judiciary of its own and the Muscogee (Creek) Nation Courts are its only judicial venues.  It cannot be said that Plaintiff is using this declaratory action for purposes of procedural fencing or

forum shopping.  The Court concludes, therefore, that the third factor weighs in favor of a declaratory action.

### D. Declaratory Action Effect on the Relationship Between Federal and Tribal Courts

The fourth factor for a declaratory action focuses on whether the federal action involves any undue interference with the tribal proceeding and whether the tribal court is better situated to provide the party with complete relief.  Mid-Continent Cas. Co., 685 F.3d at 986; Mhoon, 31 F.3d at 983.

The Thlopthlocco Tribal Town's request for a declaratory judgment includes an issue that the Muscogee (Creek) Nation Supreme Court has already decided, which is that the Thlopthlocco Tribal Town enjoys sovereign immunity and may waive it to consent to the jurisdiction of Muscogee (Creek) Nation Courts.  Pl.'s Mot. Declaratory J. (Summary J.) at 13–15.  The second part of the Thlopthlocco Tribal Town's request involves a question that has been adjudicated traditionally under federal law.  See Thlopthlocco Tribal Town, 762 F.3d at 1233–34 (recognizing that the Thlopthlocco Tribal Town is a sovereign tribe and that the question of whether a tribal court has jurisdiction over a non-member tribe is decided under federal common law).  Because the issue involves an interpretation of federal law, this Court is well situated to address it.  See, e.g., Mid-Continent Cas. Co., 685 F.3d at 986 (concluding that a state court was better situated to

address the issue regarding coverage obligations because that issue fell under state insurance law).

A declaration by this Court will not contradict the Muscogee (Creek) Nation Supreme Court's holding that the Thlopthlocco Tribal Town enjoys sovereign immunity and may waive its sovereign immunity to submit to the Muscogee (Creek) Nation Courts' jurisdiction.  This Court's declaration will clarify the appropriate circumstances under which the Thlopthlocco Tribal Town may withdraw its waiver of sovereign immunity.  The issue is within the traditional jurisdiction of federal courts and a declaratory action will neither increase friction between federal and tribal courts, nor encroach upon the tribal courts' jurisdiction. The Court concludes, therefore, that the fourth factor weighs in favor of a declaratory action.

### E.     Existence of a Better or More Effective Alternative Remedy

For the fifth factor of whether there is an alternative remedy that is better or more effective, the Court must consider whether the tribal courts are better situated to provide the seeking party with complete relief.  See Mid-Continent Cas. Co., 685 F.3d at 986.

The Thlopthlocco Tribal Town seeks a declaratory judgment following tribal exhaustion of the underlying case.  Because exhaustion is complete and the issue for which Plaintiff seeks clarity was not addressed in the underlying action by the

tribal courts, a declaratory judgment from this federal court is the remedy that would be most effective.  The alternative would be to dismiss this action and wait for the Thlopthlocco Tribal Town to be subjected to a similar lawsuit again when the Thlopthlocco Tribal Town seeks judicial recourse in its only legal venue, the Muscogee (Creek) Nation Courts.  As noted at the outset, the litigation stemming from the 2007 Thlopthlocco Tribal Town election has lasted for sixteen years and there are still outstanding legal questions that remain unanswered.  It is an abuse of discretion for a court to dismiss a declaratory judgment action when there is no pending parallel proceeding that provides a party with adequate relief.  See Fed. Rsrv. Bank of Atlanta v. Thomas, 220 F.3d 1235, 1247 (11th Cir. 2000) ("It is an abuse of discretion . . . to dismiss a declaratory judgment action in favor of a state proceeding that does not exist.").  Because there is no alternative that provides a better remedy, the Court concludes that the fifth factor weighs in favor of a declaratory action.

All the factors support Plaintiff's request for a declaratory judgment.  The Court concludes, therefore, that its exercise of jurisdiction over this declaratory judgment action is appropriate.

### III.   Declaratory Judgment Relief

#### A.   Plaintiff's Sovereign Immunity and Waiver of Such Immunity

Plaintiff seeks a declaratory judgment that it enjoys sovereign immunity in the Muscogee (Creek) Nation Courts and may, if it chooses, consent to such jurisdiction.

Indian tribes exercise inherent sovereign authority over their members and territories.  E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1304 (10th Cir. 2001).  One of the core aspects of Indian tribes' sovereignty is common law immunity, which is also necessary for a tribe's governance.  Michigan v. Bay Mills Indian Cmty., 572 U.S. 782, 788 (2014).

This Court confirms and issues a declaratory judgment that the Thlopthlocco Tribal Town is a federally recognized tribe, and it enjoys sovereign immunity as pronounced in the Muscogee (Creek) Nation Supreme Court's decision.  Muscogee (Creek) Nation Sup. Ct. Decision at 22.  This Court also confirms and issues a declaratory judgment that similar to other sovereigns, the Thlopthlocco Tribal Town may voluntarily waive its sovereign immunity to submit to the jurisdiction of the courts of another sovereign.  Id. at 22.

#### B.   Withdrawal of a Waiver of Sovereign Immunity

The Thlopthlocco Tribal Town also seeks a declaratory judgment that it may withdraw its consent to jurisdiction under appropriate circumstances.

27

Indian tribes possess immunity from direct suits and cross-suits.  Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991).  An Indian tribe is subject to suit when Congress has authorized the suit, or the tribe has waived its immunity unambiguously.  Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah ("Ute Indian Tribe"), 790 F.3d 1000, 1009 (10th Cir. 2015).  The same principle applies to counterclaims, even compulsory ones, brought against a plaintiff tribe.  Id. (citing Okla. Tax Comm'n, 498 U.S. at 509–10).  When a tribe initiates an action, it does not waive its sovereign immunity from actions that could not otherwise be brought against it.  Okla. Tax Comm'n, 498 U.S. at 509.  This is so even if those actions were pled in a counterclaim to its original action.  Id.  If there is no suggestion that Congress has authorized the counterclaims, whether a court may exercise jurisdiction over the tribe turns on whether the tribe itself has waived its immunity regarding the counterclaims.  Id.  If a tribe waives its immunity for the counterclaims, the waiver of immunity must be expressed clearly and unequivocally.  Id.

The Thlopthlocco Tribal Town argues that it draws its authority to issue waivers and withdraw them from Chapter 9 of its Election Ordinance.  According to Chapter 9, the Thlopthlocco Tribal Town's Business Committee is entitled to withdraw any previously issued consent to jurisdiction if the judicial forum

exceeds the authorized consent.  Pl.'s Mot. Declaratory J. (Summary J.) at App. 14; see Iowa Tribe, 607 F.3d at 1233–34; see also Beers, 61 U.S. at 529.

In Iowa Tribe, the Tenth Circuit Court of Appeals explained that a sovereign may set the terms and conditions for its consent to be sued, the way in which the suit is conducted, and "may withdraw its consent whenever it may suppose that justice to the public requires it."  607 F.3d at 1234.  Because the Tenth Circuit Court of Appeals held in Ute Indian Tribe, 790 F.3d at 1009, that the principle regarding waivers and consent to be sued extends to counterclaims, it follows that Iowa Tribe applies to crossclaims and cross-suits against Plaintiff, even when Plaintiff initiates the action.  See Okla. Tax Comm'n, 498 U.S. at 509 (holding that a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it, even if it initiated the action).  Unless Congress authorizes the counterclaims, or the Thlopthlocco Tribal Town expressly waives its sovereign immunity with regard to the counterclaims, the Thlopthlocco Tribal Town cannot be subjected to the counterclaims without its consent.  Consistent with Iowa Tribe and Beers, if the Thlopthlocco Tribal Town waives its sovereign immunity and the judicial forum's exercise of jurisdiction exceeds the limits of the waiver, Plaintiff may withdraw its waiver of sovereign immunity.

This does not mean, however, that a defendant to a suit by Plaintiff is without recourse.  Oklahoma Tax Commission stands for the proposition that a

tribe does not waive immunity with regard to counterclaims that would not have otherwise been brought against it.  Okla. Tax Comm'n, 498 U.S. at 509.  This principle does not apply to counterclaims that a defendant asserts in recoupment.  When a sovereign brings a suit, it waives immunity impliedly as to all of a defendant's claims asserted in recoupment.  Berrey v. Asarco, Inc., 439 F.3d 636, 643 (10th Cir. 2006) (citing Bull v. United States, 295 U.S. 247, 260–63 (1935)).  Recoupment is a defense claim that (1) arises out of the same transaction or occurrence; (2) seeks the same kind of relief as a plaintiff does; and (3) does not seek damages exceeding what a plaintiff seeks.  Id. (citing F.D.I.C. v. Hulsey, 22 F.3d 1472, 1487 (10th Cir. 1994)).  If Plaintiff initiates a suit and the defendant brings a suit that meets the elements of recoupment, then Plaintiff may not withdraw its waiver and invoke sovereign immunity against such claims.  The Court notes that recoupment was not raised and is not relevant to this action.

The Court hereby issues a declaratory judgment that the Thlopthlocco Tribal Town may withdraw its waiver of sovereign immunity in the Muscogee (Creek) Nation Courts if the tribal courts' exercise of jurisdiction exceeds the terms and conditions of the waiver.  For example, if the Thlopthlocco Tribal Town initiates a lawsuit in the Muscogee (Creek) Nation Courts and a defendant files a counterclaim or cross-suit, the Thlopthlocco Tribal Town may withdraw its waiver

and invoke sovereign immunity with respect to the counterclaim or cross-suit if its

waiver did not expressly apply to the counterclaim or cross-suit.

## IV.   Joinder

Plaintiff argues that the Court should now consider the remaining joinder

issues and join present members of the Muscogee (Creek) Nation judiciary who are

not currently named as defendants, and notice should be given to other additional

defendants, regardless of whether they will make an appearance in this suit.  Pl.'s

Mot. Declaratory J. (Summary J.) at 30–32.  Because some of the judges who held

office in the Muscogee (Creek) Nation Courts and were named Defendants in the

initial application are no longer in office, Plaintiff requests that this Court enter an

order adding Justice Amos McNac and District Judge Stacy Leeds.

Fed. R. Civ. P. 25 provides that when a public officer who is a party in an

official capacity resigns, his or her successor is automatically substituted as a

party.  An order substituting the names of the retired judicial officials is not

necessary here because under Fed. R. Civ. P. 25, the judicial officials who have

succeeded the initial parties are automatically substituted, as the updated caption so

reflects.  The Court concludes that there are no joinder issues remaining.

## CONCLUSION

The Court holds that it has jurisdiction because a live controversy exists

regarding the question of Plaintiff's ability to withdraw waivers of immunity to

consent to jurisdiction.  The Court denies Defendants' Combined Motion and

Opening Brief in Support of Dismissal for Lack of Jurisdiction.  The Court also

holds that although an examination of the record shows that there is no genuine

dispute of material fact, summary judgment is not appropriate because Plaintiff's

motion only bases its claim in declaratory relief.  The Court concludes that because

Plaintiff's request for declaratory relief meets all five <u>Mhoon</u> factors, the Court's

exercise over the declaratory judgment is appropriate.  The Court grants Plaintiff's

Statement of Position and Motion for Declaratory Judgment and Brief in Support

(Summary Judgment) as it pertains to declaratory judgment.  The Court denies

Plaintiff's Motion to Join MCN Judicial Officials and Brief in Support because

there are no joinder issues that remain.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1)     Plaintiff's Statement of Position and Motion for Declaratory

Judgment and Brief in Support (Summary Judgment) [Doc. 176] is

granted as it pertains to the request for Declaratory Judgment.  The

Thlopthlocco Tribal Town is a federally recognized tribe and entitled

to sovereign immunity in the Muscogee (Creek) Nation Courts and

may waive its sovereign immunity to consent to the jurisdiction of a

court.  The Thlopthlocco Tribal Town may also withdraw its waiver

of sovereign immunity under appropriate circumstances.

(2)     Defendants' Combined Motion and Opening Brief in Support of

Dismissal for Lack of Jurisdiction [Doc. 177] is denied.

(3)     Plaintiff's request for joinder pursuant to Plaintiff's Motion to Join

MCN Judicial Officials and Brief in Support [Doc. 86] is denied.

IT IS SO ORDERED this 20th day of December, 2023.


 /s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.